July 2, 2025

State     :

v.      :

Jaythan Hang.   :

<u>NOTICE</u>:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                    :

v.                                    :

Jaythan Hang.                      :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.** The defendant, Jaythan Hang (defendant or Mr. Hang), appeals from a Superior Court judgment of conviction following a trial at which the jury found him guilty of murder in the first degree, conspiracy, two counts of felony assault, three counts of discharge of a firearm when committing a crime of violence, and two other firearms offenses. Before this Court, the defendant asserts that the trial justice abused her discretion (1) in denying a pretrial motion for severance; (2) in erroneously admitting evidence of prior bad acts and crime in the community under Rule 404(b) of the Rhode Island Rules of Evidence; (3) in erroneously admitting two statements as statements against interest pursuant to Rule 804(b)(3) of the Rhode Island Rules of Evidence; and (4) in allowing improper lay opinion testimony pursuant to Rule 701 of the Rhode Island Rules of Evidence; and that the trial justice clearly erred (5) in denying a motion for a new trial on the

- 1 -

conspiracy count. For the reasons stated herein, we affirm the judgment of the Superior Court.

## Facts and Procedural History

In the early morning hours of Tuesday, June 26, 2018, David Page was shot and killed. Mr. Page was picking up a group of his acquaintances at 100 Lowell Avenue when shots were fired toward his Cadillac sedan (Cadillac).

The Providence Police Department (PPD) responded to the scene after receiving the first broadcast for shots fired at approximately 12:15 a.m. on June 26, 2018. Lieutenant Matthew Jennette, one of the initial responding officers to the scene, observed an unresponsive Mr. Page in the driver's seat of a Cadillac parked in front of the residence at 100 Lowell Avenue. In securing the crime scene, several shell casings from a .22 caliber Smith & Wesson firearm were found strewn about near the decedent's vehicle and the residence at 100 Lowell Avenue. Sergeant Jonathan Primiano (Sgt. Primiano), an officer with experience in digital forensic examination, continued investigating later that day and extracted surveillance footage from three different locations near the scene of the shooting. The footage captured Mr. Page's Cadillac driving near Plainfield Street before turning onto Lowell Avenue at approximately 12:11 a.m. Around the same time, a black vehicle was also observed cruising the streets in the vicinity of the shooting. The black

vehicle then turned onto Lowell Avenue just seconds after Mr. Page's Cadillac turned onto Lowell Avenue.

Unrelatedly, on July 2, 2018, the PPD and the state police responded to 59 Mink Road (Mink Road property) and 156 Hanover Street (Hanover Street property) in Providence to follow up on two separate financial fraud and narcotics investigations into an individual named Kennedy Terrero (Mr. Terrero). Lawful search warrants were executed on both properties and officers seized a key to an Audi at the Hanover Street property, but noted that there were no Audi vehicles parked at the property. Mr. Terrero was subsequently arrested and charged with crimes including felony motor vehicle theft, possession of cocaine with intent to deliver, and possession of a firearm.

Also during the search of the properties, Sergeant Alex Kanelopoulos (Sgt. Kanelopoulos) of the PPD spoke with Mr. Terrero's then-girlfriend, Leslie Pereira (Ms. Pereira). He inquired about her knowledge of the Audi key recovered in the search and a stolen vehicle involved in the narcotics investigation of Mr. Terrero. Ms. Pereira provided Sgt. Kanelopoulos the location for the stolen vehicle in question, stating that it could be found at a parking lot at the intersection of Stamford Avenue and Bissell Street. Upon arriving at that location, Sgt. Kanelopoulos observed a black Audi with Virginia license plates sitting in the parking lot. Sergeant Kanelopoulos then used the Audi key seized from the Hanover Street property to

unlock the black Audi located in the parking lot, confirming that the key belonged to the black Audi. The black Audi was subsequently returned to its rightful owner, an individual named Henry Desantez (Mr. Desantez).[1]

Meanwhile, in continuing the investigation into the shooting, Detective Michael Otrando (Det. Otrando) reviewed the video surveillance footage extracted by Sgt. Primiano from multiple locations near the Lowell Avenue shooting. After conferring with other officers and examining details in the footage, Det. Otrando came to the belief that the black vehicle captured in the surveillance footage was an Audi. On July 6, 2018, Det. Otrando advised his sergeant of that belief, after which the sergeant directed him to run a search in the PPD's police report database for stolen black Audis. From this search, Det. Otrando learned of a black Audi that had been stolen on June 21, 2018, from Mr. Desantez. In an effort to locate the black Audi, Det. Otrando learned that the vehicle had been returned to Mr. Desantez and responded to the residence associated with the vehicle registration. Upon arrival at the residence, he observed, idle in the driveway, a black Audi with tinted windows and features similar to the black vehicle observed in the surveillance footage.

---

[1] Throughout the trial, Mr. Terrero referred to this individual as "Henry Desantez," and the state's counsel referred to him as "Henry Betances." We use "Desantez" in this opinion because Mr. Terrero was the first person to mention the name on the record.

Detective Otrando seized the vehicle and had it towed for processing by the Bureau of Criminal Investigation.

Also on July 6, 2018, Det. Otrando again reviewed the police report for the stolen black Audi and noticed a narcotics-investigation narrative denoting names of individuals involved in that investigation, including Mr. Terrero and Ms. Pereira. Detective Otrando then initiated an interview with Ms. Pereira, who offered to "wear a wire" at a coming prison visit with Mr. Terrero. She did so on July 12, 2018, but the wire did not audibly capture the conversation between them.

Detective Otrando thereafter began discussions with Mr. Terrero and his attorney regarding whether he wanted to provide the state with information about the shooting of Mr. Page. During these discussions, Mr. Terrero consented to a search of his cell phone and gave an account of his knowledge of the events relating to the shooting of Mr. Page. The discussions also revealed several text message conversations between Mr. Terrero and an individual named Chandanoeuth Hay (Mr. Hay). Detective Theodore Michael (Det. Michael) subsequently obtained a search warrant for the contents of Mr. Terrero's phone and examined the records. Detective Otrando reviewed those records and ultimately determined that the cell-phone extraction data corroborated Mr. Terrero's account. The PPD obtained and executed additional search warrants and seized cell phones belonging to defendant and Mr. Hay. A cell-site location analysis of the phones by Det. Michael

revealed that both phones could be traced to the area encompassing Bissell Street and Elmwood Avenue at 12:22 a.m. and 12:28 a.m. on June 26, 2018. Furthermore, processing of the black Audi seized from Mr. Desantez's residence revealed no DNA profiles for either defendant or Mr. Hay.

Mr. Terrero entered into a cooperation agreement with the state for leniency in sentencing on his unrelated charges in exchange for his trial testimony against defendant and Mr. Hay.

On December 9, 2019, a grand jury charged defendant and Mr. Hay in a single indictment with murder, conspiracy to commit an assault with a dangerous weapon, two counts of assault with a dangerous weapon, three counts of discharge of a firearm while in the commission of a crime of violence, discharge of a firearm from a motor vehicle in a manner that created substantial risk of death or serious personal injury, and carrying a firearm without a license. On July 31, 2020, the trial justice set bail for defendant in the amount of a $100,000 surety.

A trial on the charges commenced on September 12, 2022, and continued through October 6, 2022. Fourteen witnesses testified at trial for the state, and one of those witnesses was called back to testify in defendant's case-in-chief. The testimony pertinent to this appeal is derived from the following witnesses: Eddie Lee (Mr. Lee), Mr. Terrero, Ms. Pereira, and Sgt. Primiano.

Mr. Lee, one of Mr. Page's acquaintances who was present when Mr. Page was fatally shot, testified as the sole eyewitness to the shooting. He testified that, around the time of the shooting, he occasionally stayed with his sister at the residence located at 100 Lowell Avenue. Mr. Lee explained that, although he ducked down in fear when shots were fired at Mr. Page's Cadillac, "it seemed like a car drove by shooting" and that the car appeared to be "[d]ark-colored."

Mr. Terrero testified next about his past experiences as a youth involved with gangs in Providence, his current affiliation with a Providence gang called "864," and that he came to know defendant and Mr. Hay through their shared connection to 864. He explained that, in the "street," Mr. Hay went by the name of "Big Kay" and defendant was known as "Ah Jay." Mr. Terrero also testified about the January 2018 murder of his friend, Jamal Contreras, who was associated with 864, and expressed that he had discussed the murder with members of 864 because things had become "tense" for the gang as a result. Before testifying about the shooting in question, Mr. Terrero stated that he, defendant, and Mr. Hay had driven down Lowell Avenue earlier in June and that defendant indicated that "the Trini kid lives right here," referring to a rival gang called the Trinitarios.

Mr. Terrero also recounted his version of events on the night of June 25, 2018, and the early morning hours of June 26, 2018. What follows summarizes his testimony as it pertains to this appeal. According to Mr. Terrero, during the late

- 7 -

evening hours of June 25, defendant, Mr. Hay, Mr. Terrero, and Ms. Pereira met in the Washington Park area of Providence and smoked marijuana together in Mr. Terrero's admittedly stolen white Acura. During this meeting, Mr. Hay asked Mr. Terrero to "take a ride," which Mr. Terrero believed meant to go look for "enemies." Although Mr. Hay was the "head" of 864, Mr. Terrero declined his request. Mr. Hay responded that he "needed his grip back" in reference to a .22 caliber Smith & Wesson "community gun" that members of 864 had access to. Mr. Terrero told Mr. Hay to follow him back to the Mink Road property to retrieve the gun. Mr. Hay and defendant then followed Mr. Terrero to the Mink Road property in the black Audi that the three men stole weeks earlier from Mr. Desantez. During the ride to Mink Road, Mr. Hay texted Mr. Terrero stating, "I need my grip" for a second time at 10:45 p.m. Once they arrived at the Mink Road property, Mr. Terrero went inside to retrieve the gun, returned a few moments later to the black Audi parked outside, and handed the gun to defendant. Mr. Hay and defendant drove off afterwards and Mr. Terrero asked Ms. Pereira to drop him off near the Hanover Street property so that he could take a shower; she obliged. After getting out of the shower, Mr. Terrero noticed that he had received several text messages and missed calls from Mr. Hay. Between approximately 12:33 a.m. and 12:38 a.m., Mr. Hay texted Mr. Terrero a series of messages telling him to look out for "ops," which Mr. Terrero believed meant that something was going on relating to enemy gang members and that he

should be careful. Mr. Terrero then texted Mr. Hay asking if he needed ammunition for the .22 caliber Smith & Wesson given to defendant earlier that night and Mr. Hay responded that he had already "put it away." At 12:45 a.m., Mr. Terrero asked Mr. Hay who he was with and Mr. Hay responded that Ms. Pereira had picked "us" up. Mr. Hay then sent Mr. Terrero a series of text messages telling him to hurry up and that he and defendant were waiting near Hanover Street for him. Once Mr. Terrero came outside and made contact with Mr. Hay, Ms. Pereira, and defendant, Mr. Hay informed him that they had seen a "funny car" and "somebody with a hoodie." Mr. Hay also allegedly stated "Ah Jay had no aim," to which defendant did not respond.

Later in the day on June 26, Mr. Terrero, Mr. Hay, and defendant returned to the parking lot near Stamford Avenue and Bissell Street to clean the black Audi that defendant and Mr. Hay were initially driving the prior evening. They used Clorox wipes to clean the interior of the black Audi and Mr. Terrero changed the license plate to one from Virginia. Also on June 26, Mr. Terrero and Mr. Hay exchanged text messages discussing "stripping" the white Acura that Mr. Terrero and Ms. Pereira were using the prior evening. Mr. Hay stated that he and defendant wanted to strip the white Acura, while Mr. Terrero wanted to strip the black Audi that Mr. Hay and defendant had been driving the prior evening. Mr. Hay texted that "[we] ain't all agreeing" and "it's three people," indicating to Mr. Terrero that they were "supposed to all agree" as to which vehicle would be stripped. The defendant

responded the following day that "Bro we got to all agree" and that certain vehicles were distinctly reserved for taking a ride to look for enemies.

On cross-examination, Mr. Terrero's testimony revealed discrepancies regarding certain aspects of his recall of the events in question. For example, Mr. Terrero admitted that he lied to Sgt. Kanelopoulos during the execution of search warrants on Mr. Terrero's properties when he stated that the recovered vehicle key belonged to a silver Audi, when, in fact, he knew that the vehicle key belonged to the later-seized black Audi. Cross-examination of Mr. Terrero additionally highlighted his lengthy criminal history and his potential bias as a witness resulting from the cooperation agreement he signed with the state.

Ms. Pereira also testified as a state's witness. Contrary to Mr. Terrero's recall of the events leading up to the shooting of Mr. Page, Ms. Pereira testified that only she, Mr. Hay, and Mr. Terrero were present for the group's meet-up in Washington Park, and she could not recall the content of their conversations. Her testimony was silent as to whether Mr. Terrero handed the .22 caliber Smith & Wesson to defendant after they left the Washington Park area and returned to the Mink Road property. Ms. Pereira testified that, when she arrived to pick up defendant and Mr. Hay from the parking lot on Stamford Avenue and Bissell Street, Mr. Hay exited the black Audi and asked her if she had any Clorox wipes. Ms. Pereira stated that she did not and gave Mr. Hay a T-shirt instead, which he took with him and walked back over

to the black Audi where defendant was. She stated that she dropped off Mr. Terrero, Mr. Hay, and defendant elsewhere afterwards, and that she did not recall any conversations during the car ride. Ms. Pereira also testified disparagingly about her relationship with Mr. Terrero and his character in general. She testified that Mr. Terrero always carried a gun on his person, that she felt "used" by Mr. Terrero, and that she wanted to get him in trouble when she told the PPD about the black Audi parked on Stamford Avenue and Bissell Street. Ms. Pereira further testified that she became a witness for the state by way of a subpoena but that she did not want to be in court testifying.

Sergeant Primiano, another witness for the state, testified about the surveillance footage he extracted and analyzed during the initial investigation into the shooting. The footage was played for the jury during his testimony. Sergeant Primiano testified that, based on his analysis and relevant experience, he believed the dark-colored vehicle in the surveillance video was consistent with that of an Audi. He recounted the specific physical details that he analyzed on the dark-colored vehicle in the surveillance video to come to his conclusion: "taillights, shape of windows, location of license plates, height of the vehicle, size of the vehicle." Sergeant Primiano added that he reviewed Internet images of Audis and compared those images to the suspect vehicle in the surveillance video.

The jury returned a guilty verdict on all counts on October 6, 2022. The defendant thereafter filed a timely motion for a new trial, challenging both the sufficiency and weight of the evidence. The trial justice issued a bench decision denying the motion for a new trial on November 1, 2022, and defendant's valid, albeit premature, notice of appeal followed.

On February 13, 2023, the trial justice sentenced defendant to two consecutive life sentences for murder and discharging a firearm when committing a crime of violence resulting in death; she also imposed several concurrent sentences for the remaining guilty counts. The judgment of conviction entered on June 13, 2023. Additional facts and aspects of the procedural history in this case appear in the discussion of the issues.

## Discussion

On appeal, defendant argues that the trial justice (1) abused her discretion in denying his motion for severance; (2) abused her discretion in admitting testimony regarding prior bad acts and crime in the community; (3) abused her discretion in erroneously admitting two statements as statements against interest pursuant to Rule 804(b)(3) of the Rhode Island Rules of Evidence; (4) abused her discretion in permitting Sergeant Primiano to offer his lay opinion, under Rule 701 of the Rhode Island Rules of Evidence, regarding the make of the shooter's vehicle; and (5) clearly erred in denying his motion for a new trial, which challenged both the weight and

sufficiency of the evidence before the jury on the conspiracy count. We address each of defendant's alleged errors in turn.

## A. Motion for Severance

Rule 14 of the Superior Court Rules of Criminal Procedure governs motions for severance and provides in pertinent part:

> "If it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants * * * for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

We have explained that the rule "protects defendants from prosecutorial harassment and unfair advantage, while at the same time balancing the public's interest in avoiding the cost of repetitive trials." *State v. Pereira*, 973 A.2d 19, 27 (R.I. 2009). This Court will not disturb a decision denying severance unless there is a "clear abuse of discretion." *State v. Brown*, 88 A.3d 1101, 1113 (R.I. 2014). The burden on a defendant is high; they must demonstrate prejudice "to such a degree that [they were] denied a fair trial." *Id.* (quoting *State v. Goulet*, 21 A.3d 302, 309 (R.I. 2011)). The defendant argues that he meets that burden because the trial justice admitted significant "spill-over" evidence about the codefendant, Mr. Hay, that would not have been admissible against defendant at a separate trial. We are not persuaded that defendant has met this high burden.

"As a general rule, alleged coconspirators and the substantive offenses they allegedly conspired to commit may be tried jointly." *State v. Parente*, 460 A.2d 430, 437 (R.I. 1983). Here, the state joined defendant and Mr. Hay in a single, ten-count indictment, charging both individuals with nine of the ten counts: conspiracy to commit an assault with a dangerous weapon, murder, two counts of assault with a dangerous weapon, three counts of discharge of a firearm while in the commission of a crime of violence, discharge of a firearm from a motor vehicle in a manner that created substantial risk of death or serious personal injury, and carrying a firearm without a license. The indictment also charged Mr. Hay with possession of a firearm after a conviction of a crime of violence, namely breaking and entering, in violation of G.L. 1956 § 11-47-5.

The defendant sought severance after a multi-day bail hearing, at the conclusion of which the trial justice set bail and, according to defendant, stated that she was "not satisfied that the State has offered evidence that the proof of this defendant's guilt is evident and the presumption great, that he conspired to commit an assault with a dangerous weapon, the natural and probable result of which was the murder of David Page." In support of the motion for severance, defendant initially contended that certain statements by Mr. Hay created mutually antagonistic or inconsistent defenses; and defendant also invoked the *Bruton* doctrine, suggesting that the admission of statements by Mr. Hay would violate defendant's Sixth

- 14 -

Amendment right to confront the witnesses against him. *See Bruton v. United States*, 391 U.S. 123 (1968).[2]  Additionally, defendant asserted that he would suffer prejudice from the spillover effect of the admission of evidence that implicated only Mr. Hay.

In pressing the motion for severance at a pretrial hearing, defendant conceded that he was not likely to prevail on the *Bruton* doctrine argument and instead focused on the risk of substantial prejudice from the admission of several statements attributed to Mr. Hay, but that were intended to be used against defendant.

The trial justice denied the motion for severance without prejudice.  She reasoned that, in cases involving a joint conspiracy, a claim of prejudice is insupportable if evidence would be admissible against each defendant had separate trials been conducted.  She also found nothing to indicate either antagonistic defenses between defendant and Mr. Hay, or that the proposed evidence would be so prejudicial as to be inadmissible against defendant at a separate trial.  Finally, the trial justice noted the expectation of a lengthy trial and concluded that the interests of judicial efficiency warranted a joint trial.

---

[2] In *Bruton v. United States*, 391 U.S. 123 (1968), the United States Supreme Court evaluated the constitutionality of admitting a nontestifying codefendant's confession at his and the defendant's joint trial, which inculpated the defendant as a participant in the crime. *Bruton*, 391 U.S. at 123-24, 126.  The Court held that admitting such a statement violated the defendant's Sixth Amendment right to confront the witnesses against him. *Id.* at 126, 136-37.

- 15 -

The defendant did not renew his motion for severance at trial but argues on appeal that the denial of his pretrial motion was an abuse of discretion. He contends that certain spillover evidence—specifically, Mr. Terrero's testimony about certain verbal and text-message statements by Mr. Hay, as well as testimony about Mr. Hay's prior bad acts—would not have been admissible at a separate trial of defendant alone. We perceive no abuse of discretion in the denial of defendant's motion for severance.

"Solely because a defendant has a limited role to play in the conspiracy, and the evidence introduced against his coconspirator is prejudicial to him and is more damaging than the evidence against him, does not entitle him to a severance." *Parente*, 460 A.2d at 438. The state charged defendant and Mr. Hay with having conspired with one another to commit assault with a dangerous weapon. The state introduced and relied upon testimony from Mr. Terrero about both codefendants' roles in the alleged conspiracy. Furthermore, the state joined defendant and Mr. Hay in charging each with nine of the ten counts, the tenth of which was charged solely against Mr. Hay as a person who was previously convicted of breaking and entering. The defendant's citation to *United States v. Martinez*, 994 F.3d 1 (1st Cir. 2021), is therefore readily distinguishable: In *Martinez*, the United States Court of Appeals for the First Circuit considered whether the denial of the defendant's repeated motions for severance was an abuse of discretion and determined that it was.

*Martinez*, 994 F.3d at 6, 16. However, unlike the instant matter, the jury in *Martinez* was exposed to days of detailed direct evidence regarding the alleged corrupt schemes perpetrated by a codefendant, which evidence was admitted to show the codefendant's intent to commit a crime that differed from the crime with which the defendant was charged.[3] *Id.* at 14. The single count charged against Mr. Hay— possession of a firearm after a conviction of a crime of violence in violation of § 11-47-5—required, in addition to proof that both Mr. Hay and defendant possessed a firearm, that Mr. Hay had a prior conviction of breaking and entering. Proof of this discrete additional element was, unlike the evidence presented in *Martinez*, not highly prejudicial to defendant.

Our review of the record satisfies us that the trial justice appropriately considered defendant's concerns about prejudice and weighed them against the possible lengthy duration of the trial and the reluctance of witnesses who would be called to testify. Her decision denying the motion for severance was not a clear abuse of discretion.

---

[3] Also noteworthy is that, in *United States v. Martinez*, 994 F.3d 1 (1st Cir. 2021), the court acknowledged the significant "hurdle that faces a defendant seeking severance from a codefendant with whom [he] has been charged with conspiring * * *." *Martinez*, 994 F.3d at 13; *see United States v. DeLuca*, 137 F.3d 24, 36 (1st Cir. 1998) ("[I]n the context of conspiracy, severance will rarely, if ever, be required.") (quoting *United States v. Flores-Rivera*, 56 F.3d 319, 325 (1st Cir. 1995)).

- 17 -

**B. Testimony Regarding Prior Bad Acts and Crime in the Community**

The trial justice admitted evidence regarding seven violent or criminal acts that took place in Providence on various occasions in 2017 and 2018. Specifically, Mr. Terrero testified (1) that in May 2017, defendant got out of a truck that Mr. Terrero had been driving on Gallup Street and, at Mr. Hay's direction, fired a couple of shots at a burgundy Toyota Avalon that had been following their truck (2017 Gallup Street shooting); (2) that Mr. Hay fired multiple shots at a Honda Odyssey while Mr. Terrero drove Mr. Hay and some women in the vicinity of the Cranston Street Armory, also in May 2017 (2017 Cranston Street shooting); (3) that Mr. Terrero's friend Jamal Contreras was murdered on January 23, 2018, leading to a tense situation for members of the 864 gang; (4) that in late May 2018, Mr. Terrero was at a grocery store at the intersection of Academy Avenue and Chalkstone Avenue when he encountered Mr. Hay, his girlfriend, defendant, and defendant's girlfriend, who was bleeding; according to what Mr. Hay told Mr. Terrero, the vehicle that Mr. Hay and the three others were riding in had just been shot at (May 2018 shooting); (5) that on June 4, 2018, when Mr. Terrero was living at 156 Hanover Street, he was awakened by the sound of more than twenty gunshots, went outside, and found bullets on the sidewalk near the driveway of his apartment; and he subsequently contacted Mr. Hay, who told Mr. Terrero that he had also been shot at while reversing in a car in the driveway at 156 Hanover Street (Hanover Street

shooting); (6) that sometime in June of 2018, Mr. Terrero and defendant stole a black Audi and marijuana from Mr. Desantez (Desantez robbery); and (7) that Mr. Terrero stole other vehicles in the summer of 2018, including a white Acura, and that Mr. Hay and defendant wanted to strip down the white Acura.

The defendant argues on appeal that the trial justice improperly admitted Mr. Terrero's testimony about the seven prior violent or criminal acts pursuant to Rule 404(b), because the testimony either did not relate to the murder of Mr. Page or did not involve defendant. He further contends that the testimony about the seven prior violent or criminal acts served as an "emotional appeal to garner outrage at the level of violence in the Providence community."

Our review of a trial justice's decision regarding the admissibility of evidence is for an abuse of discretion. *State v. Pona*, 66 A.3d 454, 465 (R.I. 2013) (*Pona II*). Rule 404(b) states:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable." R.I. R. Evid. 404(b).

This Court has also stated that evidence of other crimes or wrongs is admissible when it is "interwoven or in instances when introduction is necessary for a trier of fact to hear a complete and, it is to be hoped, coherent story so as to make

an accurate determination of guilt or innocence." *State v. Clements*, 83 A.3d 553, 561 (R.I. 2014) (quoting *State v. Pona*, 948 A.2d 941, 949-50 (R.I. 2008) (*Pona I*)). We bear in mind, however, that the line between Rule 404(b) evidence presented to demonstrate propensity and Rule 404(b) evidence presented for an admissible purpose is a "fine one to draw and an even more difficult one for judges and juries to follow." *State v. Ciresi*, 45 A.3d 1201, 1211 (R.I. 2012) (quoting *State v. Rodriguez*, 996 A.2d 145, 150 (R.I. 2010)). Moreover, we have explained that, as when ruling on the admissibility of any evidence, trial justices must also consider whether the "probative value [of the proffered evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." R.I. R. Evid. 403; *Pona II*, 66 A.3d at 466. "[A] trial justice's discretion to exclude evidence under Rule 403 must be used sparingly. * * * It is only when evidence is marginally relevant and enormously prejudicial that a trial justice must exclude it." *Pona II*, 66 A.3d at 466 (quoting *State v. Smith*, 39 A.3d 669, 675 (R.I. 2012)).

We have examined the extensive record of proceedings closely and determine that defendant's challenge to the admissibility of Mr. Terrero's testimony about four of the seven prior violent or criminal acts fails under the long-standing raise-or-waive rule. *See Ciresi*, 45 A.3d at 1212. Furthermore, we determine that

- 20 -

defendant's arguments fail to persuade us that the trial justice abused her discretion in permitting Mr. Terrero to testify about the three remaining prior incidents: the 2017 Gallup Street shooting, the 2017 Cranston Street shooting, and the May 2018 shooting.

### 1. Waiver

The "raise-or-waive" rule precludes a litigant from raising an issue on appeal that she or he has not articulated at trial. *Ciresi*, 45 A.3d at 1212. "Our long-standing rule is that a contemporaneous objection or at least a motion to strike" is a necessary precondition to appellate review. *Id.* (quoting *State v. Garcia*, 743 A.2d 1038, 1048-49 n.7 (R.I. 2000)).

The defendant concedes that Mr. Terrero testified about stealing vehicles in the summer of 2018 without objection from counsel for either defendant or Mr. Hay. His challenge to that testimony is thus clearly waived. *Ciresi*, 45 A.3d at 1212. The defendant also acknowledges that his counsel did not object to Mr. Terrero's testimony about the murder of Jamal Contreras or the Desantez robbery, but emphasizes that counsel for Mr. Hay did offer contemporaneous objections to the testimony about those violent or criminal acts, as well as to testimony about the Hanover Street shooting. Citing cases from various state and federal appellate courts, and relying especially on *State v. Bruce*, 411 P.3d 300 (Haw. 2017), defendant argues that Mr. Hay's contemporaneous objections to the testimony about

- 21 -

those three violent or criminal acts inured to his benefit and sufficed to preserve for appellate review the propriety of its admissibility.

In *Bruce*, the Supreme Court of Hawaii reasoned that the purpose of requiring a specific objection—to put the trial justice on notice of an error—is served when a codefendant states an objection, "regardless of whether the other defendant joins the co-defendant's objection or objects independently." *Bruce*, 411 P.3d at 308. *Bruce* identifies what we consider to be the primary purpose of the raise-or-waive rule. *See State v. Doyle*, 235 A.3d 482, 495 (R.I. 2020) ("[W]e require a specific objection so that the allegation of error can be brought to the attention of the trial justice, who will then have an opportunity to rule on it.") (quoting *Pona II*, 66 A.3d at 468). However, the raise-or-waive rule serves other purposes as well, including to preclude the appealing party from having a "second bite at the apple." *Konar v. PFL Life Insurance Company*, 840 A.2d 1115, 1120 (R.I. 2004) ("The taking of an appeal does not provide the appealing party with a second bite at the apple. For example, a party may not assert an argument on appeal that was not presented below."); *see also* Robert J. Martineau, *Considering New Issues on Appeal: The General Rule and the Gorilla Rule*, 40 Vand. L. Rev. 1023, 1031 (1987) ("If no objection is made, the adverse party may think that the [non-objecting] party agrees with the action or for tactical reasons decides not to raise an objection.").

Our examination of the record in this case reveals that defendant neither objected to Mr. Terrero's trial testimony regarding the murder of Jamal Contreras, the Hanover Street shooting, or the Desantez robbery; nor did defendant oppose the state's pretrial motion *in limine* regarding those same three prior violent or criminal acts. In fact, during the pretrial hearing on cross-motions *in limine*, the state explicitly identified multiple prior violent or criminal acts that it sought to explore through Mr. Terrero's testimony at trial, including (1) the 2017 Gallup Street shooting; (2) the 2017 Cranston Street shooting; (3) the murder of Jamal Contreras; (4) the May 2018 shooting; (5) the Hanover Street shooting; and (6) the Desantez robbery. In response, the trial justice asked counsel for defendant to clarify "exactly what" evidence defendant sought to preclude pursuant to Rule 404(b); and counsel for defendant identified only the 2017 Gallup Street shooting, the May 2018 shooting, and two incidents not at issue in this appeal. As such, we cannot determine whether counsel for defendant had tactical reasons for not objecting at trial to Mr. Terrero's testimony about the murder of Jamal Contreras, the Hanover Street shooting, or the Desantez robbery. We decline defendant's invitation to craft a new exception to the raise-or-waive rule, particularly considering the ambiguity concerning the reasons for defendant's lack of objections to this testimony.

The defendant's challenge to the admissibility of Mr. Terrero's testimony about the murder of Jamal Contreras, the Hanover Street shooting, the Desantez

- 23 -

robbery, and stealing vehicles in the summer of 2018 is not properly preserved; therefore, we will not evaluate the merits of his arguments related to that testimony.

## 2. The 2017 shootings and the May 2018 shooting

As previously discussed, the trial justice held a pretrial hearing on cross-motions *in limine* regarding the 2017 Gallup Street shooting, the 2017 Cranston Street shooting, and the May 2018 shooting. The state argued that it sought admission of the two 2017 shootings for the purpose of demonstrating that defendant, Mr. Hay, and Mr. Terrero (1) had a common scheme or plan to shoot rival gang members and (2) had access to firearms. With respect to the May 2018 shooting, the state argued that testimony about the incident "would provide a comprehensive narrative" about the crimes that defendant was accused of having committed as well as "important context for some of the evidence in th[e] case." More specifically, the state argued that the May 2018 shooting was "a backdrop" for the retaliatory nature of the shooting that occurred on June 26, 2018. The defendant, on the other hand, opposed any testimony regarding the 2017 Gallup Street shooting as inadmissible propensity evidence. He also opposed testimony regarding the May 2018 shooting as "completely irrelevant to this case" and violative of Rules 402[4] and 403 of the Rhode Island Rules of Evidence.

---

[4] Rule 402 of the Rhode Island Rules of Evidence states:

In disposing of the cross-motions *in limine*, the trial justice found that

> "all of this evidence is probative of the motive, the opportunity, the intent of the defendant[s'] preparation, having access to firearms, absence of mistake or accident involving firearms continually being used. Subject to a limiting instruction for each of these incidences, assuming Kennedy Terrero testifies to such, I think they are admissible under Rule 404(b) * * *."

Mr. Terrero's subsequent trial testimony regarding the 2017 Gallup Street shooting was preceded by the following limiting instruction by the trial justice:

> "Once again, the mere membership or affiliation with a gang, or a group, or even friendship or association with their members, is not evidence that Mr. Hang is of bad character or that he necessarily is disposed to commit a crime. Once again, any such evidence, to the extent that you decide to consider it, is admitted for the limited purpose as it may, in your minds, if at all, relate to Mr. Hang's motive, planning, intent, or knowledge with respect to the charges for which he is presently on trial.
>
> "Once again, ladies and gentlemen, you are the sole judges of the facts and the evidence, and it is entirely up to you as to what evidence to accept or to reject."

When Mr. Terrero testified at trial about the 2017 Cranston Street shooting, defendant joined Mr. Hay in objecting to the testimony without stating a precise

---

> "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the constitution of Rhode Island, by act of congress, by the general laws of Rhode Island, by these rules, or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible."

basis for the objection. The trial justice overruled the objections and gave the following limiting instruction upon request by counsel for Mr. Hay:

> "Ladies and gentlemen, to the extent that you have just heard testimony that, on another occasion, the defendants allegedly were involved in other misconduct, bear in mind that neither defendant has been charged with any offense arising out of the alleged misconduct just described by Mr. Terrero. And from this evidence you cannot conclude that either defendant is a bad person or that either has the tendency or propensity to commit the crimes with which they are each charged in the case before you now.

> "Any such evidence that you just heard, to the extent that you decide to consider it, is admitted only for the limited purpose as it may, in your minds, relate to either defendant's state of mind, motive, knowledge, or intent, or to show some common scheme, plan, preparation, or opportunity on either defendant's part, with respect to conduct described by Mr. Terrero and the specific charges for which each of the defendants is presently on trial.

> "Again, you are the sole judges of the facts and the evidence, and it is entirely up to you as to what evidence to accept or reject."

On this record, we cannot say that the trial justice abused her discretion in permitting Mr. Terrero to testify about the 2017 shootings. She considered the purposes proposed by the state in light of the pertinent charges against defendant, including conspiracy to commit an assault with a dangerous weapon and the several firearms charges. The trial justice determined at the hearing on the motion *in limine* that the 2017 shootings were admissible to demonstrate defendant's opportunity to access firearms as well as his and Mr. Hay's nonaccidental or mistaken use of firearms. *Cf.*

- 26 -

*State v. Husband*, 162 A.3d 646, 657-58 (R.I. 2017) (noting as significant that evidence of prior shooting by a codefendant who had pled prior to the defendant's trial had slight probative value and was cumulative against the defendant, particularly where the "defendant's relationship with the other coconspirators was not disputed"). Furthermore, her lengthy limiting instructions directed the jurors to the purposes for which they could consider the testimony, none of which were for propensity purposes. *See Hartman v. Carter*, 121 R.I. 1, 5, 393 A.2d 1102, 1105 (1978) ("The term 'discretion' imports action taken in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law.").

Moreover, this case differs from *State v. DeCosta*, 293 A.3d 297 (R.I. 2023), on which defendant heavily relies, both in context and in the purpose for which the prior conduct was introduced. *See DeCosta*, 293 A.3d at 302 (rejecting admissibility of evidence of the defendant's prior assault of a third party when one of the purported purposes of that evidence was to show the defendant's intent towards the victim of the crimes charged). Here, the record is clear that the state did not offer testimony of the 2017 shootings to demonstrate an intent to shoot Mr. Page. Additionally, the record is clear that defendant never raised any argument or concern about the use of this testimony to demonstrate defendant's intent to shoot Mr. Page; defendant cannot raise this argument for the first time on appeal. *See Ciresi*, 45 A.3d at 1212.

Finally, we cannot conclude that the "evidence [was] marginally relevant and enormously prejudicial" such that the trial justice was compelled to exclude the testimony about the 2017 shootings pursuant to Rule 403. *Pona II*, 66 A.3d at 466 (quoting *Smith*, 39 A.3d at 675).

With respect to Mr. Terrero's testimony about the May 2018 shooting, the record indicates that counsel for defendant objected "for reasons previously stated," implicitly referring to the pretrial argument that the testimony was "completely irrelevant." The trial justice overruled the objection and gave another limiting instruction after Mr. Terrero recounted seeing Mr. Hay and defendant at the intersection of Academy Avenue and Chalkstone Avenue in late May 2018, just after defendant's girlfriend had reportedly been shot:

> "[T]o the extent that you've heard additional testimony that on another occasion both Mr. Hay and Mr. Hang were allegedly involved in another situation involving guns or being shot, bear in mind that, once again, neither of those individuals have been charged with any offense arising out of that situation. And from this evidence, you cannot conclude that either defendant is a bad person, or that either has the tendency or proclivity to commit the crimes with which they are both charged here before this court.
>
> "Any such evidence that you just heard, to the extent that you decide to consider it, may be admitted only for the limited purpose as it may, in your minds, relate to either defendant's state of mind, motive, knowledge, or intent, or to show some common scheme, plan, preparation, or opportunity on either defendant's part with respect to the conduct described by Mr. Terrero and the specific charges for which they each are presently on trial."

Neither defendant nor Mr. Hay committed the May 2018 shooting, and as such, the testimony was not evidence of their acts offered to prove their character or propensity within the meaning of Rule 404(b). However, the record reflects that, in overruling defendant's objection to this testimony as irrelevant prior to trial, the trial justice considered whether the testimony about the May 2018 shooting was relevant to defendant's alleged motivation for the shooting that occurred on June 26, 2018, and determined that it was. Additionally, as with the testimony regarding the 2017 shootings, the trial justice provided a limiting instruction to guide the jury with respect to how they might appropriately consider the testimony.

Based on the record before us, we are satisfied that the trial justice acted within her discretion in admitting Mr. Terrero's testimony about the May 2018 shooting of defendant's girlfriend as relevant to defendant's alleged motivation for the shooting. We are also satisfied that she did not abuse her discretion in determining that the testimony was neither needlessly cumulative nor so highly prejudicial as to outweigh its probative value. *Pona II*, 66 A.3d at 466.

### C. Statements Admitted Pursuant to Rule 804(b)(3)

Mr. Terrero testified, without objection, that Mr. Hay made the following out-of-court statements: (1) "I need my grip" and (2) "Ah Jay had no aim." The defendant asserts on appeal that the trial justice abused her discretion in admitting

these statements because "neither comment is truly against penal interest and both are tainted by speculation."

The defendant's failure to object prior to the admission of these statements, or to move to strike the testimony once given, once again triggers the raise-or-waive rule. *Ciresi*, 45 A.3d at 1212. Although defendant objected to a follow-up question about the meaning of "Ah Jay had no aim[,]" Mr. Terrero offered Mr. Hay's inculpatory out-of-court statement without defendant bringing it to the trial justice's attention. *Doyle*, 235 A.3d at 495. The defendant has consequently waived appellate review of the admissibility of these out-of-court statements.

### D. Lay Opinion Offered by Sergeant Primiano

The trial justice preliminarily determined that Sergeant Jonathan Primiano of the PPD would be permitted to offer a lay opinion, subject to cross-examination, that the dark-tinted sedan captured in surveillance video recorded on June 26, 2018, was consistent with an Audi.[5] At trial, during Sgt. Primiano's direct testimony, he identified a black sedan on surveillance video footage prior to being asked what he believed the make of that vehicle to be at the time he observed it on the footage. Counsel for Mr. Hay renewed an objection to the testimony, and the trial justice gave the following instruction before Sgt. Primiano answered:

---

[5] Counsel for Mr. Hay filed a motion *in limine* seeking to preclude the lay opinion testimony of Sgt. Primiano regarding the make of the black sedan observed in video surveillance from the area of the shooting.

"[O]rdinarily, the law does not permit a witness to testify about his or her opinions or conclusions. An exception to this, as I described to you, is for expert witnesses.

" * * *

"A further exception to this rule is when a witness has formed an opinion that is rationally based upon the perception of the witness, and when that opinion is helpful to a clear understanding of the witness' testimony, or the determination of a fact in issue.

"Detective Sergeant Primiano's opinions that will be expressed in just a moment is not expert in nature, but is offered for your consideration, and is based upon his personal observations as a police officer. It is up to you to assess the credibility of his testimony and determine how much weight you will give to it, in the same manner that you consider the testimony of every other witness."

Sergeant Primiano explained that when he observed the vehicle on the footage, he "believed [it] to be consistent with that of an Audi."

The defendant challenges the admission of Sgt. Primiano's lay opinion, arguing that it did not assist the jury because he supported his conclusions "solely through the details of his training and experience rather than a description of an Audi's characteristics and how those characteristics are consistent with images of the shooter's car." However, our examination of the record reveals that defendant raises this challenge for the first time on appeal; we will not reach the merits of this challenge as it is barred by the raise-or-waive rule. *Doyle*, 235 A.3d at 495.

### E. Motion for a New Trial

The defendant argues that the trial justice committed clear error in denying his motion for a new trial; he challenges the guilty verdict on the conspiracy count as being against both the weight and the sufficiency of the evidence. More specifically, defendant argues that there was no evidence to corroborate the questionable testimony of the most percipient witnesses, Mr. Terrero and Ms. Pereira, that defendant conspired with Mr. Hay to commit an assault with a deadly weapon. We are unpersuaded.

This Court will not overturn a trial justice's decision denying a motion for a new trial based upon the weight of the evidence unless the trial justice committed clear error or overlooked or misconceived material evidence. *State v. Chez*, 309 A.3d 1182, 1192 (R.I. 2024). We afford the trial justice great deference on a motion for a new trial challenging the weight of the evidence because she or he is in an "especially good position to evaluate the facts and to judge the credibility of the witnesses." *Id.* (quoting *State v. Johnson*, 199 A.3d 1046, 1051 (R.I. 2019)).

We consider whether the trial justice, acting as a thirteenth juror, exercised independent judgment in considering the evidence presented and the credibility of witnesses. *Chez*, 309 A.3d at 1192. In undertaking this review as the thirteenth juror, the trial justice must evaluate the evidence in light of the jury charge and determine whether she or he would have reached a different result than the jury. *Id.* Where the

trial justice agrees with the verdict or determines that reasonable minds could differ, the motion for a new trial should be denied. *Id.*

This Court reviews a trial justice's decision denying a motion for a new trial for lack of sufficiency of the evidence *de novo*, and we evaluate the evidence in the light most favorable to the verdict that the jury returned. *Chez*, 309 A.3d at 1190.

Conspiracy requires "an agreement by two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose." *State v. Huntley*, 171 A.3d 1003, 1006 (R.I. 2017) (quoting *State v. Abdullah*, 967 A.2d 469, 474-75 (R.I. 2009)). Importantly, "[t]he evidence presented [to establish a conspiracy] may be solely circumstantial such that it may be 'inferentially established by proof of the relations, conduct, circumstances, and actions of the parties.'" *Id.* (quoting *State v. Disla*, 874 A.2d 190, 197 (R.I. 2005)). Here, the trial justice instructed the jury to consider whether the evidence demonstrated that defendant and Mr. Hay

> "in some manner, came to a mutual understanding to try to accomplish a common and unlawful plan, in this case, committing an assault with a dangerous weapon. The existence of a conspiracy may be proved by direct evidence or entirely by circumstantial evidence or by any combination of both direct and circumstantial evidence."

The record further reflects that, in evaluating the evidence presented, the trial justice recognized the circumstantial nature of the case against defendant and acknowledged that only some of the testimony offered by Mr. Terrero and Ms. Pereira was credible, while most of it was not. She assessed the totality of the

- 33 -

evidence before the jury, including evidence that corroborated Mr. Terrero's testimony: a text message that Mr. Hay sent to Mr. Terrero at 10:45 p.m., stating he "needs his grip"; the surveillance videos depicting a dark-tinted car driving down Lowell Avenue immediately prior to the shooting of Mr. Page; testimony from officers of the PPD that the dark-tinted car was consistent with an Audi; evidence that Mr. Hay placed a phone call to Ms. Pereira just minutes after the shooting; testimony that Ms. Pereira observed defendant and Mr. Hay in the black Audi at Stamford Avenue and Bissell Street not long after the murder; the lack of DNA found on the stolen black Audi, which was consistent with Ms. Pereira's testimony that defendant and Mr. Hay wiped it down after the shooting; cell-site location data indicating that defendant's cell phone was in the vicinity of the lot at Stamford Avenue and Bissell Street at 12:28 a.m.; and the text message from Mr. Hay to Mr. Terrero indicating that Ms. Pereira had picked "us" up.

The trial justice also gave a thorough assessment of Ms. Pereira's demeanor while testifying and her reluctance to be involved as a witness, and ultimately determined that Mr. Terrero's testimony was more truthful than Ms. Pereira's testimony. After comprehensively reviewing the evidence, the trial justice concluded that reasonable minds could differ and denied the motion for a new trial accordingly.

The defendant nevertheless emphasizes the earlier decision of the trial justice to set bail for defendant, particularly her determination that contradictory evidence provided by the state's witnesses during those proceedings failed to satisfy her that defendant "conspired to commit an assault with a dangerous weapon, the natural and probable result of which was the murder of David Page." The defendant argues that the trial justice overlooked what he characterizes as the state's failure to prove a connection between defendant and 100 Lowell Avenue and defendant and Mr. Lee. The defendant therefore maintains that the evidence was not sufficient to support the guilty verdict.

The defendant's argument misses the mark. Our review of the evidence and testimony presented at trial reveals that the trial justice supportably found that the state introduced sufficient evidence to prove that defendant was guilty of conspiracy to commit assault with a dangerous weapon. There was evidence and testimony to show that, on the night of the murder, defendant was in the white Acura with Mr. Hay and Mr. Terrero when Mr. Hay said he wanted to "take a ride" and asked for his "grip"; that defendant was with Mr. Hay in the black Audi when Mr. Hay texted Mr. Terrero that he "needed his grip"; that defendant was with Mr. Hay in the black Audi when they arrived at the Mink Road property to retrieve the gun; that Mr. Terrero handed the gun to defendant directly while defendant was sitting in the passenger seat of the black Audi; that defendant had previously stated that "the Trini

kid lives right here," referring to a rival gang member, while driving down Lowell Avenue; and that the January 2018 murder of Jamal Contreras had been the subject of conversation between Mr. Terrero, Mr. Hay, and defendant in the aftermath of his death. Additionally, there was evidence and testimony to show that Mr. Lee was in Mr. Page's Cadillac, parked near 100 Lowell Avenue, when shots were fired at the Cadillac from a dark-tinted vehicle; and that after the shooting, Mr. Hay said to defendant, Mr. Terrero, and Ms. Pereira, "Ah Jay had no aim." Viewing this evidence and testimony in the light most favorable to the guilty verdict, we are satisfied that it is sufficient to establish that defendant conspired with Mr. Hay to commit assault with a dangerous weapon. *See Huntley*, 171 A.3d at 1006.

In light of the findings by the trial justice on the record before us, we cannot conclude that she clearly erred in denying the defendant's motion for a new trial.

## Conclusion

For the foregoing reasons, we affirm the judgment of conviction and remand the record to the Superior Court.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Jaythan Hang. |
| **Case Number** | No. 2023-236-C.A. (P1/19-6260BG) |
| **Date Opinion Filed** | July 2, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Kristin E. Rodgers |
| **Attorney(s) on Appeal** | For State: <br><br> Virginia M. McGinn <br> Department of Attorney General <br> For Defendant: <br><br> J. Richard Ratcliffe, Esq. |